## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

WALTER B. FREEMAN,

        Plaintiff,

        v.

UNITED STATES DEPARTMENT OF THE
INTERIOR, *et al.*,

        Defendants.

Civil Case No. 12-1094 (BAH)
Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

The plaintiff Walter B. Freeman filed this action under the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2), against the United States Department of the Interior ("DOI") and two of its components, the Interior Board of Land Appeals ("IBLA") and the Bureau of Land Management ("BLM"), seeking to set aside two decisions of the IBLA relating to the plaintiff's mining rights, on the grounds that the decisions were arbitrary, capricious, and lacked substantial evidence. *See* Compl. at 19 ("Prayer for Relief"), ECF No. 1. Pending before the Court is the plaintiff's Motion for Partial Summary Judgment on his First Cause of Action, challenging the May 7, 2008 IBLA decision in *United States v. Freeman*, 174 IBLA 290 (2008) ("2008 IBLA Decision"),[1] which upheld the jurisdiction of DOI's Office of Hearings and Appeals ("OHA") to determine the validity of unpatented mining claims at historical dates when the claims were allegedly subject to a government taking within the meaning of the Fifth Amendment of the

---

[1] The 2008 IBLA Decision is contained in the Administrative Record ("AR") for this action, at pages AR 1182–90. Since the voluminous AR, which contains 15,274 pages of documents, is on a CD provided to the Court and has not been filed on the docket for this case, *see* Notice Regarding AR at 1, ECF No. 14, citations to the 2008 IBLA Decision will be to both the publicly available IBLA Digest of decisions and the AR.

Constitution.  Pl.'s Mot. Partial Summ. J. & Mem. Supp. ("Pl.'s Mot.") at 2–3, ECF No. 15.[2]

For the reasons explained below, the plaintiff's motion is denied and the 2008 IBLA Decision

stands.[3]

## I.    BACKGROUND

The Court first briefly reviews the statutory and regulatory framework for assessing the

validity of  mining claims under the General Mining Law of 1872 ("Mining Law"), 30 U.S.C. §§

22–54 (2006), before turning to a summary of the two decades of administrative proceedings that

have culminated in this lawsuit.

### A.    Statutory and Regulatory Framework

"To encourage mining in the western United States, Congress enacted the General

Mining Act of 1872."  *Orion Reserves Ltd. P'ship v. Salazar*, 553 F.3d 697, 699 (D.C. Cir.

2009); *see also Watt v. W. Nuclear*, 462 U.S. 36, 47–49 (1983) (noting that "[w]ith respect to

land deemed mineral in character, the mining laws provided incentives for the discovery and

exploitation of minerals").  As an incentive to explore for valuable mineral deposits, the Mining

Law permits citizens "to go onto unappropriated, unreserved public land," *United States v.

Locke*, 471 U.S. 84, 86 (1985), and to "stake, or locate, claims to extract minerals without prior

government permission and without paying royalties to the United States."  *Orion Reserves*, 553

_____

[2] The Court acceded to the parties' request to bifurcate review of the plaintiff's two causes of action and to decide, first, whether the IBLA correctly concluded in its 2008 decision that DOI's OHA had jurisdiction over DOI's contest challenge, before considering the plaintiff's second cause of action, which seeks review of IBLA's 2010 merits decision that concluded plaintiff's mining claims were null and void as of the alleged taking dates due to the lack of discovery of valuable mineral deposits. *See* Meet and Confer Statement, at 1, ECF No. 13. The parties explain that, "[i]f, as Plaintiff contends, jurisdiction was lacking in the agency below, there will be no need for judicial review of the merits of the agency's decision under the second cause of action" since "[t]he judicial challenge to the agency's decision on the merits will be moot if the agency had no jurisdiction."  *Id.*

[3] The plaintiff has requested oral argument on the pending motion, Pl.'s Mot. at 3, but given the ample written submissions of the parties, this request is denied.  *See* LCvR 7(f) (allowance of oral hearing is "within the discretion of the court").

F.3d at 699 (citing 30 U.S.C. § 26) (internal quotation marks omitted); *see also Kunkes v. United States*, 78 F.3d 1549, 1551 (Fed. Cir. 1996); *Cook v. United States*, 85 Fed.Cl. 820, 823 (2009), *aff'd*, 368 Fed. App'x. 143 (Fed. Cir. 2010); *Freese v. United States*, 639 F.2d 754, 757–58 (Ct. Cl. 1981).[4] Those who locate "mining locations" on public land are expressly granted "the exclusive right of possession and enjoyment" but only "so long as they comply with the laws of the United States, and with State, territorial, and local regulations . . . ." 30 U.S.C. § 26.

### 1.   *Requirements for Valid Mining Claim*

Before a Congressional moratorium was enacted in 1994, claimants could "apply for purchase of a deed, or 'patent,' conveying full legal title to the land on which their claims are located." *Orion Reserves*, 553 F.3d at 699 (citing 30 U.S.C. § 29).[5] To qualify for a patent, the applicant must establish that the mining claim is valid. *United States v. Shumway*, 199 F.3d 1093, 1101–02 (9th Cir. 1999) ("[N]o right arose from an invalid claim."). The D.C. Circuit has pointed out, however, that "[e]ven without a patent, claimants can maintain their mining rights indefinitely so long as they comply with federal, state, and local requirements" for a valid claim. *Orion Reserves*, 553 F.3d at 699 (citing 30 U.S.C. §§ 26, 28). These possessory interests are "unpatented" claims and give the owner equitable title, as opposed to "patented" claims, in which a private owner has been bestowed full legal title. *Kunkes v. United States*, 32 Fed. Cl.

---

[4] The Secretary of the Interior is authorized to withdraw or sequester land from mining operations under the Mining Law. 43 U.S.C. § 1714; *Kosanke v. U.S. Dep't of Interior*, 144 F.3d 873, 874 (D.C. Cir. 1998) ("[A]ny lands withdrawn from mineral entry are no longer considered to be within the public domain and therefore are not subject to the statutory rights enumerated in the General Mining Law.").

[5] Beginning on October 1, 1994, Congress placed a moratorium on the processing of patent applications for unpatented mining claims in the Department of the Interior and Related Agencies Appropriations Act of 1995, Pub. L. No. 103-332, § 112, 108 Stat. 2499, 2519 (1994) ("[N]one of the funds appropriated or otherwise made available pursuant to this Act shall be obligated or expended to accept or process applications for a patent for any mining . . . claim."). The moratorium did not apply to certain applications pending before the Secretary of the Interior at the time of the moratorium, *see id.* § 113; Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 314(c), 110 Stat. 3009 (1996), but the plaintiff's claims were affected. This moratorium has been continued in effect. *See* Consolidated Appropriations Act of 2008, Pub. L. No. 110-161, § 408(a), 121 Stat. 1844, 2519 (2007).

249, 252 (Fed. Cl. 1994), *aff'd*, 78 F.3d 1549 (Fed. Cir. 1996) (noting that for an unpatented

claim "legal title to the land remains in the United States, [but] the claimant enjoys a valid,

equitable title in the claim, possessing all of the incidents of real property"); *Ford v. United

States*, 101 Fed. Cl. 234, 238 n.6 (Fed. Cl. 2011) ("An unpatented mining claim is an interest in

only the minerals in the land and not in the land's surface; the government retains fee title to the

land.").

      An unpatented mining claim is valid against the United States only when both a

discovery of valuable mineral deposit within the limits of the claim has been made, and the

claimant has complied with all statutory and regulatory requirements relating to the location,

recordation, and filing of claims.  *See* 30 U.S.C. §§ 22, 26, 28, 28e.[6]  *See also Best v. Humboldt

Placer Mining Co.*, 371 U.S. 334, 336 (1963) (unpatented mining claims are "valid against the

United States if there has been a discovery of mineral within the limits of the claim, if the lands

are still mineral, and if other statutory requirements have been met").  As the Supreme Court

explained almost a century ago, "no right arises from an invalid claim of any kind . . . otherwise

they work an unlawful private appropriation in derogation of the rights of the public."  *Cameron

v. United States*, 252 U.S. 450, 460 (1920).

      Thus, although a claimant may explore for mineral deposits before perfecting a mining

claim, without a discovery, the claimant has no right to the property against the United States or

an intervenor.  30 U.S.C. § 23 (mining claim perfected when there is a "discovery of the vein or

lode"); *see also Cole v. Ralph*, 252 U.S. 286, 295–96 (1920); *Waskey v. Hammer*, 223 U.S. 85,

---

[6] The D.C. Circuit in *Orion Reserves*, 553 F.3d at 699, noted that "[a]mong these obligations is a duty to perform annual assessment work.  The Mining Law requires that until a patent has been issued therefor, not less than $100 worth of labor shall be performed or improvements made during each year.  When a claimant fails to perform this annual assessment work, his claim is open[ed] to relocation . . . as if no location of the [mineral deposit] had ever been made." (internal quotation marks and citations omitted).

90 (1912) (noting that discovery is "a prerequisite to the location of the claim"); *Am. Colloid Co. v. Babbitt*, 145 F.3d 1152, 1156 (10th Cir. 1998) ("Before one may obtain any rights in a mining claim, one must 'locate' a valuable deposit of a mineral."); *Mineral Policy Ctr. v. Norton*, 292 F. Supp. 2d 30, 48 (D.D.C. 2003) ("'A mining claim does not create any rights against the United States and is not valid unless and until all requirements of the mining laws have been satisfied.'" (quoting *Skaw v. United States*, 13 Cl. Ct. 7, 28 (1987))).

To satisfy the discovery requirement for a valid claim, the mere physical presence of a mineral is insufficient. Instead, "the discovered deposits must be of such a character that 'a person of ordinary prudence would be justified in the further expenditure of his labor and means, with a reasonable prospect of success, in developing a valuable mine." *United States v. Coleman*, 390 U.S. 599, 602 (1968) (internal quotations omitted); *see also Cameron*, 252 U.S. at 459 (**"**[T]o support a mining location the discovery should be such as would justify a person of ordinary prudence in the further expenditure of his time and means in an effort to develop a paying mine. That is not a novel or mistaken test, but is one which the Land Department long has applied and this court has approved."); *Davis v. Nelson*, 329 F.2d 840, 846 (9th Cir. 1964) ("[V]alidity of [ ] title . . . depends upon the resolution of a question of fact, that is, has there been a discovery of valuable mineral within the limits of the claim?"); *Foster v. Seaton*, 271 F.2d 836, 838 (D.C. Cir. 1959). "The obvious intent was to reward and encourage the discovery of minerals that are valuable in an economic sense." *Coleman*, 390 U.S. at 602. If the discovered deposits fail the "prudent person" test, the Government has the right to clear the title and the right to the possession of its land from a "useless and annoying encumbrance." *Davis*, 329 F.2d at 846 (quoting *Mulkern v. Hammitt*, 326 F.2d 896, 897 (9th Cir. 1964)).[7] On the other hand, if

---

[7] A complementary "marketability" test may be used to evaluate whether the mine can be operated and minerals can

the discovered deposits are valuable under the "prudent person" test, the unpatented mining

claim "is a property right in the full sense, unaffected by the fact that the paramount title to the

land is in the United States." *Union Oil Co. of Cal. v. Smith*, 249 U.S. 337, 349 (1919). This

constitutes a property interest, "which is within the protection of the Fifth Amendment's

prohibition against the taking of private property for public use without just compensation."

*Skaw v. United States*, 740 F.2d 932, 936 (Fed. Cir. 1984).

### 2. *Administrative Review of Contested Claims*

BLM is a subagency within DOI tasked with administering mining claims on federal

public land. *See generally* 43 C.F.R. § 3809; *Nat'l Wildlife Fed'n v. Burford*, 835 F.2d 305,

307–08 (D.C. Cir. 1987) (BLM is "the subagency of the Department charged with land

management responsibilities, with permanent, comprehensive guidelines for carrying out its

mandate"). To determine whether a claim is valid, BLM conducts a mineral examination. If the

examination indicates the lack of discovery of a valuable mineral deposit or that the applicant

failed to meet other administrative requirements under the Mining Law, the BLM may initiate an

administrative mining contest proceeding to challenge the validity of the claim, since either of

those examination results, if substantiated, may render the mining claimant ineligible for a

patent.

Prior to validity proceedings, unpatented claims amount to a potential property interest,

since it is the discovery of a valuable mineral deposit and satisfaction of statutory and regulatory

requirements that bestows possessory rights. *See Ickes v. Underwood*, 141 F.2d 546, 548–49

(D.C. Cir. 1944) (until there has been a determination that there has been a valuable discovery,

---

be sold at a profit. *Coleman*, 390 U.S. at 602 (stating that the marketability test "identif[ies] with greater precision
and objectivity the factors relevant to a determination that a mineral deposit is 'valuable'" and describing it as a
"logical complement to the 'prudent-man test'").

claimants had only a gratuity from the United States); *Payne v. United States*, 31 Fed. Cl. 709, 711 (1994) (rejecting plaintiff's argument that in the absence of a challenge to validity, the court must take at face value their assertion that claims are supported by an adequate mineral discovery). To have a compensable interest in an unpatented mining claim sufficient to bring a taking action, the validity of the mining claim must be established. *See Ford*, 101 Fed. Cl. at 238 (finding without BLM determination, plaintiff could not establish a valid property interest in his unpatented mining claim).

The BLM has broad authority to initiate contest challenges, and may do so "for any cause affecting the legality or validity of any entry or settlement or mining claim." 43 C.F.R. § 4.451-1. The meaning and scope of this regulation is the gravamen of the dispute at issue in the pending motion. Mining contest challenges are brought before the OHA, which "is an authorized representative of the Secretary for the purpose of hearing, considering, and deciding matters within the jurisdiction of the Department involving hearings, appeals, and other review functions of the Secretary." 43 C.F.R. § 4.1.[8] The OHA provides two levels of review to resolve mining contests: Administrative Law Judges ("ALJs") in the Hearing Division have authority to hold evidentiary hearings and issue decisions concerning the validity of mining claims; and the IBLA decides appeals from ALJ rulings. 43 C.F.R. §§ 4.452-4–8; 43 C.F.R. § 4.452-9.

In contest proceedings before an OHA ALJ, the BLM bears the initial "burden of going forward with sufficient evidence to establish a *prima facie* case" that the claim is invalid. *Foster,* 271 F.2d at 838. "The government presents a *prima facie* case where a governmental mineral

---

[8] OHA is composed of a Hearings Division and three standing boards: Interior Board of Contract Appeals, Interior Board of Indian Appeals, and the IBLA. Only the decisions of the IBLA are at issue in this action.

examiner offers expert testimony, based on probative evidence, that the discovery of a valuable mineral deposit has not been made within the boundaries of a contested claim." *Ernest K. Lehmann & Assocs. of Montana, Inc. v. Salazar*, 602 F. Supp. 2d 146, 150 (D.D.C. 2009), *aff'd*, 377 F. App'x 28 (D.C. Cir. 2010) (citing *United States v. Pass Minerals, Inc.*, 168 IBLA 115, 123 (IBLA 2006)).  Once the government has made a *prima facie* case, the burden shifts to the claimant to establish by a preponderance of the evidence sufficient proof of validity.  *Id.*  The claimant bears the ultimate burden of persuasion and must produce evidence to rebut the government's case and establish the validity of the mining claim.  *Lara v. Sec'y of Interior*, 820 F.2d 1535, 1542 (9th Cir. 1987); *see also Ernest K. Lehmann & Assocs., Inc.,* 602 F. Supp. 2d at 150 (citing *United States v. Rannells,* 175 IBLA 363, 380 (IBLA 2008))); *Reoforce, Inc. v. United States*, 2013 U.S. Claims LEXIS 250, at *17 (Fed. Cl. Apr. 4, 2013); *United States v. Everett Foster*, 65 Interior Dec. 1, 11 (1958) ("Although the Government initiated the charges and had the initial burden of sustaining at least the first charge—that there had been no discovery—if it were to prevail in the contests, once the Government had produced evidence to show that no discovery had been made, it was up to the contestees to overcome that evidence.").

Either party may appeal the ALJ determination to the IBLA, s*ee* 43 C.F.R. § 4.410(a), which serves as DOI's "review authority charged with deciding, on behalf of the Secretary, matters relating to the use and disposition of public lands and their resources."  *Aera Energy LLC v. Salazar*, 642 F.3d 212, 216 (D.C. Cir. 2011) (internal quotations and citations omitted). Decisions of the IBLA constitute final agency action, 43 C.F.R. §4.403, and, therefore, no further administrative appeal is authorized within DOI, 43 C.F.R. § 4.21(d).  *See also Hoyl v. Babbitt*, 129 F.3d 1377, 1382 (10th Cir. 1997) ("The IBLA's decision represents the final agency action . . . ."); *Doria Mining & Eng'g Corp. v. Morton*, 608 F.2d 1255, 1257 (9th Cir. 1979) ("A decision

of the IBLA is not subject to further appeal before either the Director or any Appeals Board…

[and] constitute[s] the Secretary of the Interior's final decision")

## B. Factual and Procedural Background

The instant dispute stems from the plaintiff's original 161 unpatented mining claims,[9] located by his predecessors-in-interest between 1940 and the early 1970s, on approximately 4,968 acres of Federal land administered by BLM and the United States Forest Service ("USFS"), mostly located in the Siskiyou National Forest in Southern Oregon. *Freeman*, 174 IBLA at 291; AR at 1183. Litigation over the validity of the plaintiff's claims has been ongoing for over two decades before the United States Court of Federal Claims ("CFC"), in DOI administrative proceedings, and, now, before this Court.

### 1. *Effect of Moratorium on Plaintiff's Patent Application*

On September 9, 1992, the plaintiff filed an application seeking to patent 151 of the 161 mining claims. *Freeman*, 174 IBLA at 291‒92; AR 1183‒84. Before the application was acted on by BLM, the congressional moratorium took effect on October 1, 1994, halting the processing of patent applications for unpatented mining claims. *See* Department of the Interior and Related Agencies Appropriations Act of 1995 § 112. Due to this moratorium, "BLM has since refused to process [the plaintiff's] application." *Freeman*, 174 IBLA at 292; AR 1184. On December 17, 1992, the plaintiff filed a "plan of operations" ("POO") with the USFS, proposing to sample and mine his claims. *Id.* "After several delays by the USFS and intervening administrative appeals by [the plaintiff], the USFS denied his POO, rejecting his last appeal on October 11, 2000." *Id.*

---

[9] The minerals contained within these mining claims are nickel, iron and chromium. *See* Pl.'s Mot. at 1, n.1. During the contest proceedings, the plaintiff abandoned at least 79 of these claims, reducing the number of contested claims to 82. *Id.* at 7, n.15.

### 2. *Proceedings Before the U.S. Court of Federal Claims*

On January 22, 2001, the plaintiff filed suit in the CFC, alleging that the defendants had, "by refusing to approve his patent application and by effectively denying approval of his POO, engaged in a taking of his property rights," in violation of the Fifth Amendment. *Freeman*, 174 IBLA at 292; AR 1184; *see also* AR 10699–712 (CFC Complaint). The plaintiff's claim before the CFC turns on whether he possessed a compensable property right against the United States. To facilitate making this determination, the CFC stayed proceedings in the case and remanded the matter to the DOI "for determination of validity of plaintiff's mining claims." AR 10728 (CFC Order at 1, *Freeman v. United States*, No. 01-39L (Oct. 10, 2001)).[10]

Following the stay of CFC proceedings, the parties successfully reached agreement regarding both the dates when the plaintiff claimed the alleged taking occurred and the appropriateness of the use of those dates for a validity determination. The plaintiff's counsel emphasized that "we believe this process should try to determine the validity of [the plaintiff's] claims as of the date of the taking," reiterating that "the critical date should be the date the claims were taken." AR 10877, Ex. 101 at 5 (Letter, dated September 5, 2003, from Richard M. Stephens, plaintiff's counsel, to Otto Schumacher, Western Mine Engineering, Inc. & Terry Maley, BLM). Indeed, the plaintiff's counsel cautioned that "[w]e hope this case does not follow the path used in *Skaw v. United States*, 740 F.2d 932 (Fed. Cir. 1984), where BLM determined that claims were not valid as of a date well after the alleged taking." *Id.* at 6. As to the applicable dates, the plaintiff suggested two possible dates for the validity determination: "the first date is 1993 when the Forest Supervisor publicly stated in no uncertain terms that there was

---

[10] The CFC commonly stays litigation over alleged government takings of unpatented mining claims until the "BLM has determined the validity of the plaintiffs' mining claims." *Holden v. United States*, 38 Fed. Cl. 732, 735 (Fed. Cl. 1997).

'no way in hell' that the Forest Service would allow [the plaintiff] to mine his claims;" and "the second potential date of taking is the date the Forest Service's formal process [on the plaintiff's POO] was completed . . . in 2000." *Id.*

In response to the plaintiff's proposal about using the years 1993 or 2000 as the dates when the alleged taking occurred, DOI sought more precise dates than entire years. AR 10887–89, Ex. 105 (Letter, dated November 12, 2003, from Bradley Grenham, Regional Solicitor DOI to Richard M. Stephens, plaintiff's counsel). At the outset, DOI rejected the plaintiff's suggestion that the date when a Forest Service employee allegedly made the "no way in hell" statement could constitute the date of a taking since, even if that statement were made, such an oral statement would not constitute a final agency action necessary for the validity determination. *Id.* at 10888. At the same time, DOI suggested the date of October 6, 2000, for the validity determination, since this was the date of the denial of the POO, which was cited in the plaintiff's complaint before the CFC as a taking. *Id.* at 10887–88. In addition, DOI proposed October 1, 1994, the effective date of the congressionally imposed moratorium on the processing of mineral patents, as another possible date to use for the validity determination. *Id.* at 10888. The agency requested that the plaintiff provide notice, in writing, by December 1, 2003, of any disagreement about the use of either October 6, 2000, or October 1, 1994, as the dates of the alleged taking for the validity determination. *Id.*

The plaintiff's response did not dispute the appropriateness of these two dates—October 1, 1994 and October 6, 2000—as the alleged taking dates. Rather, the plaintiff agreed that "October 6, 2000 is one possible appropriate date." AR 10892, Ex. 106 (Letter, dated November 19, 2003, from Richard M. Stephens, plaintiff's counsel, to Bradley Grenham, Regional Solicitor

DOI).  The plaintiff reiterated that 1993 was another possible date, but acknowledged that, since this date was close to the 1994 moratorium date offered by the agency, the plaintiff agreed that "October 4, 1994 is the appropriate date for the temporary taking of Mr. Freeman's rights to a patent."  *Id.*

With this agreement on the alleged "taking" dates, the BLM reviewed the plaintiff's mining claims to determine whether the requisite discovery had occurred by either of those dates. After extensive examination, the mineral team assigned to determine the validity of the mining claims as of the two alleged "taking" dates, determined that there was a lack of discovery and recommended that the BLM issue a mining contest.  AR 7751–52, Ex. 1 (DOI-BLM Mineral Report, dated January 31, 2005, stating "no discovery . . . exists on any of the Claimant's 161 mining claims . . . It is recommended that the BLM initiate contest proceedings . . . .  Minerals have not been found on any of the 161 mining claims . . . in sufficient qualities or quantities to constitute a discovery.  The minerals could not have been marketed at a profit as of either the 1994 or 2000 marketability dates.").

### 3.    *2007 OHA ALJ Ruling*

An OHA ALJ conducted a 25-day contest claim hearing initiated by BLM, and received over 400 exhibits and over 3,400 transcript pages of testimony elicited by the parties.  *See Freeman,* 174 IBLA at 293; AR 1186.  At the conclusion of the hearing, the ALJ raised *sua sponte* the concern that he lacked "jurisdiction or authority to resolve the allegation of the [contest] Complaint that discovery of a valuable mineral deposit did not exist on any of the contested claims as of 1994 and 2000."  AR 1264 (OHA ALJ Order, dated August 10, 2007, on "Ruling on Jurisdictional Issue and Certification for Interlocutory Appeal; Claim Validity As of the Date of Hearing Is Not At Issue") ("2007 ALJ Ruling").  Both parties expressed

disagreement with the jurisdictional concern expressed by the ALJ and took the position that OHA "has jurisdiction to determine the validity of the claims as of the alleged takings dates in 1994 and 2000." *Id*. at 1265.[11]  Nevertheless, contrary to the views of both parties, the ALJ ruled that the OHA lacked jurisdiction to review the validity of mining claims at the critical historical dates when the alleged takings occurred. *Id*. at 1262, 1265.[12]

The 2007 ALJ Ruling acknowledged the lack of "any controlling precedent directly addressing the jurisdictional issue," as well as the lack of clear direction as to what constitutes the "critical date for determining validity when a patent application has been filed." AR 1266. Due to this perceived dearth of controlling authority, the 2007 ALJ Ruling relied heavily on dicta in two other ALJ decisions, "which concluded that this office had no authority to determine whether contested mining claims were valid as of the date of alleged takings which were subject to a federal lawsuit." *Id.* at 1265 (citing *United States v. Aloisi*, CACA 41272 (May 2, 2007) and *United States v. Story*, Idaho 15974 (Nov. 19, 1981)).

Three inter-related reasons are set out in the 2007 ALJ Ruling to reach this conclusion about the OHA ALJ's lack of authority to decide the validity of mining claims as of the alleged takings dates.  First, the ALJ construed the authority of the government to initiate claim contests under the DOI regulation codified at 43 C.F.R. 4.451-1, and found that although this regulation

---

[11] Indeed, the plaintiff argued strenuously in his written submission before the OHA ALJ that "THE ALJ HAS AUTHORITY TO RULE WHETHER FREEMAN'S MINING CLAIMS WERE VALID IN 2000 AND IN 1994," AR 1350 (capitalization in original), noting that "there is nothing to restrict the authority of the Secretary from making a validity determination on any particular date."  AR 1351 ("Contestee Walter Freeman's Brief on Authority of [ALJ] To Determine Validity as of Certain Dates").  Moreover, the plaintiff pointed specifically to the language in the regulation in dispute here, stating, "this language is broad and certainly includes the allegations by the Government that in 1994 or 2000 the Freeman claims were not legal or valid discovery."  AR 1353.

[12] The ALJ rejected the plaintiff's alternative suggestion that the validity of the mining claims be determined at the date of the hearing, in addition to the alleged taking dates, because the contest complaint challenged only "the existence of a discovery as of 1994 and 2000." *Id.*  This part of the 2007 ALJ Ruling was affirmed by the IBLA. *Freeman*, 174 IBLA at 293; AR 1185.

grants "broad" power to DOI to initiate a contest, it also limits the charge or contest that may be brought to "a cause affecting the legality or validity of a mining claim." *Id*. at 1268. The ALJ listed such causes as including "the failure to discover a valuable mineral deposit within the claim, the failure to properly locate the claim, or the failure to pay any required annual maintenance fee." *Id*. at 1274. By contrast, the ALJ characterized "the alleged taking of a mining claim" as a "motivating reason[] for filing a contest but . . . not [a] cause[] affecting the legality or validity of a claim." *Id*. In short, the ALJ determined that the regulation "has conditioned" the Secretary's authority regarding mining claims to causes "affecting the legality or validity of a mining claim" and such causes "do not include an alleged taking of the mining claim." *Id*.

Second, and relatedly, since a validating discovery of valuable minerals "may be made even after a contest proceeding has been initiated," *id*. at 1268 (citing *United States v. Foster*, 65 Interior Dec. 1, 5‒6 (1958), *aff'd*, *Foster v. Seaton*, 271 F.2d 836 (D.C. Cir. 1959)), the ALJ determined that the "law does not appear to contemplate making a discovery determination as of the dates of alleged takings, unless such a date coincidentally coincides with the applicable critical date: the date of the hearing or, if Contestee complied with all the patent requirements, the date of compliance," *id*. at 1269. In the plaintiff's case, the 1994 and 2000 dates did not correspond with the hearing date, and because "it seems unlikely that [the plaintiff] complied" with the requisite patent requirements by the alleged taking dates, those takings dates failed to correspond with either critical date. *Id.* at 1270–71.

Finally, the ALJ concluded that the purpose of the Mining Law is "better served by restricting" validity determinations to the critical dates of the contest hearing or compliance with

patent requirements, rather than "based upon facts existing as of the dates of the alleged takings or some other non-critical dates in the past." *Id*. at 1270. Indeed, the ALJ called it "nonsensical to encourage and reward through a determination of validity the development and discovery of deposits not presently valuable," or to find "a deposit which is presently valuable, and whose development should rewarded and encouraged by validating the encompassing mining claim, . . . invalid for lack of discovery at some prior point in time." *Id*. at 1271.

The ALJ found that "[t]he foregoing leads to the conclusion that [DOI] has no authority to initiate a contest, and this office has no jurisdiction to resolve a contest, based upon the charge that no discovery existed on each mining claim as of 1994 and 2000 rather than the applicable critical date." *Id.* at 1274.

### 4. *2008 IBLA Decision Reversing ALJ's 2007 Ruling*

The BLM filed an interlocutory appeal to the IBLA challenging the 2007 ALJ ruling that the Secretary, and by extension OHA, did not have the necessary jurisdiction to determine the validity of unpatented mining claims as of alleged takings dates prior to the contest hearing.[13] On May 7, 2008, the IBLA reversed the ALJ's ruling that it lacked jurisdiction, finding instead that "the Secretary, through BLM, has the authority to bring a contest to determine the validity of mining claims as of the dates of the alleged takings," and that OHA ALJs have "jurisdiction and

---

[13] Until the ALJ threw a proverbial "monkey wrench" into the proceedings by raising *sua sponte* the issue of jurisdiction, both parties agreed that the dates of the alleged taking were appropriate benchmarks for determining discovery. *See* Defs.' Opp'n at 9 (citing Pl.'s Brief on Authority of Administrative Law Judge to Determine Validity as of Certain Dates at 7, 11; AR 1351, 1355). In what the defendants accurately label as an "about-face from the years over which Plaintiff agreed that the mineral exam and any contest would consider October 1994 and October 2000 as the validity dates," Defs.' Opp'n at 9, the plaintiff did not join BLM's interlocutory appeal but rather reversed his position. Specifically, after "initially agreeing with BLM that [the ALJ] has jurisdiction to determine validity as of the alleged takings dates," before the IBLA, the plaintiff "assert[ed] that the ALJ lacks such jurisdiction." *Freeman*, 174 IBLA at 296 n.4; AR 1190. The plaintiff filed his own interlocutory appeal to the IBLA challenging only the ALJ's ruling that OHA lacked authority to determine the validity of the plaintiff's mining claims as of the hearing date. As noted, *see* note 11, *supra*, the 2008 IBLA Decision denied the plaintiff's interlocutory appeal and affirmed the ALJ's determination that the validity of the claim as of the hearing date was not alleged in the contest petition and, therefore, not at issue. *Id.*; AR 1190.

authority to adjudicate such a contest." *Freeman*, 174 IBLA at 297; AR 1189. The IBLA observed that while "a claimant may make a discovery and validate a mining claim after any such date, even after contest proceedings have begun," there "is nothing in the applicable statutes, Departmental regulations, or case law that restricts mining contests" in the manner interpreted by the ALJ. *Freeman*, 174 IBLA at 296; AR 1188. In fact, the IBLA noted that "[t]he Board has upheld numerous contest decisions in which the contestant's complaint alleged invalidity only as of a date years prior to the date of the hearing." *Freeman*, 174 IBLA at 296 n.9; AR 1188 (citing *United States v. Clear Gravel Enters., Inc.*, 2 IBLA 287 (1971); *United States v. Stewart*, 1 IBLA 161 (1970); and *United States v. Bartlett*, 2 IBLA 275 (1971)).

The IBLA disagreed with the ALJ's interpretation of the governing DOI regulations and concluded that a "claim that is not supported by a discovery as of the alleged takings dates would be invalid *at that time* under the mining laws, and the Government can surely bring a contest on that basis pursuant to 43 C.F.R. § 4.451-1." *Freeman*, 174 IBLA at 296; AR 1188 (emphasis in original).[14] The IBLA pointed out that the "Department's authority to determine claim validity as of any point in time has long been recognized by the courts." *Freeman*, 174 IBLA 295; AR 1187 (citing *Cameron*, 252 U.S. at 460). Correspondingly, this authority "surely encompasses providing assistance to the United States in resolving a takings lawsuit that arises out of mineral entries on public lands." *Id.*

### 5.   *Remand and 2010 IBLA Decision*

The IBLA remanded the matter to the ALJ. During post-hearing briefing, the plaintiff conceded the invalidity of 50 claims, which the ALJ declared null and void. Subsequently, the

---

[14] The IBLA noted that the ALJ failed to consider another prerequisite for validation of a mining claim in addition to discovery, namely, the absence of an intervening right, stating that, "regardless of the date for which validity has been challenged," upon initiation of a contest claim, the United States is asserting a "competing property interest against that of the claimant. 174 IBLA 296 n.8; AR 1188.

ALJ concluded that discovery of valuable mineral deposits had not been made on the remaining 111 claims at the time of the alleged takings. *See United States v. Freeman*, 179 IBLA 341, 345 (2010) ("2010 IBLA Decision"); AR 5809. The IBLA affirmed this decision in 2010. *Id.* at 389–90. [15]

### 6. *The Plaintiff's Instant Complaint*

On June 27, 2012, the plaintiff filed the instant complaint, challenging the 2008 and 2010 IBLA Decisions in two causes of action. *See* Compl. at 1. The first cause of action alleges that IBLA's 2008 holding "that mining claims can be determined to be presently invalid based on historic economic conditions is arbitrary, capricious, [] [an] abuse of discretion, [] not in accordance with the law," *id.* ¶ 32, and "in excess of its statutory jurisdiction," *id.* ¶ 33. The plaintiff alleges that the IBLA "confuse[d] the initiation of contest proceedings with the establishment of intervening rights," *id.* ¶ 36, failed to observe procedural rules, *id.* ¶ 38, failed to support its decision by substantial evidence, *id.* ¶ 39, and that the DOI "is collaterally estopped from taking [a] position contrary to the rulings" in other OHA cases, *id.* ¶ 40.

The second cause of action alleges that the "IBLA's 2010 decision[,] declaring Plaintiff's mining claims invalid for lack of discovery of a valuable mineral deposit," *id.* ¶ 43, is "arbitrary and capricious," *id.* ¶ 44, contrary to the plaintiff's constitutional rights, *id.* ¶ 45, in excess of statutory authority, *id.* ¶ 46, "issued without observance" of procedural requirements under the APA, *id.* ¶ 47, and unsupported by substantial evidence, *id.* ¶ 48. The plaintiff's pending partial motion for summary judgment addresses only the first cause of action.

---

[15] Since the 2010 IBLA Decision is challenged in the plaintiff's second cause of action, described below, and not at issue in the pending motion, the reasoning of this decision is not further discussed here.

## II.   LEGAL STANDARD

### A.   Summary Judgment

Granting a motion for summary judgment is appropriate if the movant carries the burden of showing "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," based upon the pleadings, depositions, and affidavits, and other factual materials in the record.  FED. R. CIV. P. 56(a), (c); *Ali v. Tolbert*, 636 F.3d 622, 628 (D.C. Cir. 2011); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  A genuine issue of material fact is one that could change the outcome of the litigation.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986). The Court is only required to consider the materials explicitly cited by the parties, but may, on its own accord, consider "other materials in the record."  FED. R. CIV. P. 56(c)(3).

In this case, the Court is presented with a partial motion for summary judgment for the purposes of reviewing the plaintiff's legal challenge to a final agency action in the form of an IBLA decision.  "[W]hen an agency action is challenged[] . . . [t]he  entire case on review is a question of law, and only a question of law."  *Marshall Cnty. Healthcare Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993).  This Court need not and ought not engage in lengthy fact finding, since "[g]enerally speaking, district courts reviewing agency action under the APA's arbitrary and capricious standard do not resolve factual issues, but operate instead as appellate courts resolving legal questions."  *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1096 (D.C. Cir. 1996); *see also Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) ("Under the APA, it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted

the agency to make the decision it did.") (quotation marks and citation omitted); *McDonough v. Mabus*, 907 F. Supp. 2d 33, 42 (D.D.C. 2012); *Wilson v. McHugh*, 842 F. Supp. 2d 310, 315 (D.D.C. 2012); *Caez v. United States*, 815 F. Supp. 2d 184, 188 (D.D.C. 2011). Neither party has raised a disputed material fact necessary to resolution of the legal issue posed in the pending partial motion for summary judgment.

### B. Deference Under APA

When an administrative determination is challenged under the APA, "a reviewing court shall set aside any agency action, finding, or conclusion that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 507 (D.C. Cir. 2010) (quoting 5 U.S.C. § 706(2)(A)). An agency action is arbitrary and capricious if the agency has "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42–43 (1983). "The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Mount Royal Joint Venture v. Kempthorne*, 477 F.3d 745, 753 (D.C. Cir. 2007) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43).

An agency's interpretation of its own regulation commands substantial judicial deference. *See Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 415–17 (1945); *Auer v. Robbins*, 519 U.S. 452, 463 (1997); *Drake v. F.A.A.*, 291 F.3d 59, 68 (D.C. Cir. 2002). "It is sometimes said that this deference is even *greater* than that granted an agency interpretation of a statute it is entrusted to administer." *Paralyzed Veterans of Am. v. D.C. Arena L.P.*, 117 F.3d 579, 584

(D.C. Cir. 1997). "When an agency interprets its own regulation, the Court, as a general rule, defers to it 'unless that interpretation is 'plainly erroneous or inconsistent with the regulation.'" *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1337 (2013) (quoting *Chase Bank USA, N. A. v. McCoy*, 131 S. Ct. 871, 880 (2011)) (quoting *Auer*, 519 U.S. at 461); *see also Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2166 (2012) (agency's interpretation controls unless it is plainly erroneous or inconsistent with the regulation); *Seminole Rock*, 325 U.S. at 414 (noting that a regulation "becomes . . . controlling weight unless it is plainly erroneous or inconsistent with the regulation."); *Texas v. EPA*, 726 F.3d 180, 195 (D.C. Cir. 2013) (agency interpretation of its regulation is "controlling because the interpretation is neither plainly erroneous [n]or inconsistent with the regulation, and there is no reason to suspect that it does not reflect the agency's fair and considered judgment on the matter in question") (internal quotations and citations omitted; brackets in original). Thus, a plaintiff challenging an agency's interpretation of its own regulations carries a "heavy burden in advancing [that] claim" because an "agency's interpretation of its own regulations 'must be given controlling weight unless it is plainly erroneous.'" *In re Polar Bear Endangered Species Act Listing & Section 4(d) Rule Litig. — MDL No. 1993*, 709 F.3d 1, 11 (D.C. Cir. 2013) (internal citations omitted); *see Auer*, 519 U.S. at 463; *Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512 (1994) ("[W]e must defer to the [agency]'s interpretation unless an 'alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation."). "Although an agency is 'entitled to significant deference in interpreting its own regulation—perhaps even more than an agency gets in interpreting a statute under *Chevron*—it is unlikely we would defer to an unreasonable agency interpretation of an ambiguous regulation." *Menkes v. U.S. Dep't of Homeland Sec.*, 637 F.3d 319, 343 (D.C. Cir. 2011) (internal citations

omitted). Indeed, an agency is not permitted to "to promulgate mush and then give it concrete form only through subsequent less formal 'interpretations.'" *Paralyzed Veterans of Am.*, 117 F.3d at 584–85.

The D.C. Circuit has provided explicit instructions on the scope of review under the arbitrary and capricious standard applicable to challenges, such as the instant one, to a decision of the IBLA regarding mining claims. *See Aera Energy LLC*, 642 F.3d at 218 ("[T]he IBLA's decision . . . represents Interior's final agency action for the purposes of judicial review"). Specifically, in *Orion Reserves*, 553 F.3d at 703–04, the Court stated: "We uphold the IBLA's determinations so long as the Board engaged in reasoned decisionmaking and its decision is adequately explained and supported by the record. Likewise, because substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, we reverse an agency's decision only when the record is so compelling that no reasonable factfinder could fail to find to the contrary." *Id.* (internal citations and quotation marks omitted).

## III. DISCUSSION

The Supreme Court has long recognized that the Secretary of DOI is granted broad plenary authority under the Mining Law over the administration of public lands, including the determination of the validity of any mining claims. As the Supreme Court explained in *Cameron*, 252 U.S. at 459–60,

> [b]y general statutory provisions the execution of the laws regulating the acquisition of rights in the public lands and the general care of these lands is confided to the Land Department, as a special tribunal; and the Secretary of the Interior, as the head of the department, is charged with seeing that this authority is rightly exercised to the end that valid claims may be recognized, invalid ones eliminated, and the rights of the public preserved.

*Id.* The Court further made clear that even when "the mineral land law does not in itself confer such authority . . . in the absence of some direction to the contrary, the general statutory provisions before mentioned vest it in the land department." *Id*. at 461. *See also Best*, 371 U.S. at 336–39 (noting that "the Department has been granted plenary authority over the administration of public lands, including mineral lands; and it has been given broad authority to issue regulations concerning them" and that "Congress has entrusted the Department of the Interior with the management of the public domain and prescribed the process by which claims against the public domain may be perfected").

The plaintiff does not challenge the general jurisdiction of DOI to make claim validity determinations or the grant to the OHA, under 43 C.F.R. § 4.1, of "the full authority of the Secretary." Pl.'s Mot. at 13. Rather, the plaintiff contends that OHA's authority to exercise the power of the Secretary has been limited by regulation "to those matters within the jurisdiction of the Department involving hearings and appeals," which jurisdiction is set out in regulation 43 C.F.R. § 4.451-1, governing the government's initiation of contests. *Id*. According to the plaintiff, regulation 43 C.F.R. § 4.451-1 does not provide authority for the agency to make determinations regarding the legality or validity of mining claims as of discrete historical dates, but may only "determin[e] the legality or validity [of mining claims] in the **present**." *See* Pl.'s Mot. at 13 (emphasis in original); *id*. ("A contest complaint which does not seek a determination of present legality or validity is not within the scope of this regulation."); *id*. at 14 ("despite the broad authority of OHA, its jurisdiction is limited by the Department's regulations regardless of whether the parties, including the Department, desire a decision"). The defendants disagree with this "pinched and constricted" reading of the disputed regulation, Defs' Opp'n at 24, contending

that the plain language of this regulation broadly authorizes the agency "to determine validity on any date relevant to the action prompting the validity determination," *id*. at 33.

The plaintiff argues that this regulation does not authorize OHA "to determine the validity of Freeman's claims as of historical dates based on historical circumstances no longer in existence," Pl.'s Mot. at 2–3, and that the 2008 IBLA Decision to the contrary is arbitrary and capricious, for principally the following three reasons: (1) the plain meaning of the disputed regulation limits OHA's jurisdiction "to determining the legality or validity in the present," *id*. at 13; (2) the decision conflicts with DOI policies and the purpose of the Mining Law, *id*. at 23–27; and (3) the decision relies upon precedent not supportive of the conclusion and fails to follow precedent in a manner violative of collateral estoppel principles and the Equal Protection clause, *id*. at 27–35.

For the reasons discussed below, the Court finds that regulation 43 C.F.R. § 4.451-1 is unambiguous and, further, that the agency's interpretation of its regulation reflected in the 2008 IBLA Decision is fully consistent with the plain language of the regulation and entitled to substantial deference. For the reasons set out below, the plaintiff's arguments that the 2008 IBLA Decision is arbitrary and capricious are unavailing.

### A. 2008 IBLA Decision Reflects Unambiguous Meaning of Disputed Regulation

The DOI regulation at issue here, 43 C.F.R. § 4.451-1, provides, in pertinent part, that "The Government may initiate contests for any cause affecting the legality or validity of . . . any mining claim." 43 C.F.R. § 4.451-1. The parties dispute whether the phrase "affecting the legality or validity," as used in the regulation, is sufficiently broad to provide authority for the OHA to evaluate mining claims based on historical dates. *See* Pl.'s Mot. at 13 (language of disputed regulation "does not refer to the 'historical validity' of the mining claim"); Defs.' Mem.

Opp'n Pl.'s Partial Mot. Summ. J. (Defs.' Opp'n") at 15, ECF No. 16 ("[T]here is nothing in the applicable statutes, Departmental Regulations, or case law that restricts mining contest" in this manner). Construction of this DOI regulation must begin with the words in the regulation and their plain meaning.

The regulation permits the government to contest a mining claim and the OHA to hear such contest, premised on "any cause." Thus, the power of the government to bring, and OHA's concomitant power to hear, a contest claim is broad. As the Supreme Court has recently noted, the word "any" "has an " 'expansive meaning,'" that "can broaden to the maximum, but never change in the least, the clear meaning of the phrase selected by Congress here." *Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2042 (2012) (quoting *Dep't of Hous. and Urban Dev. v. Rucker*, 535 U.S. 125, 131 (2002). *See also* Defs.' Opp'n at 16 (noting that "[a]ny cause, by definition, is any reason for the action, any motive, or any ground for legal action" and citing *Merriam-Webster's Collegiate Dictionary* 182 (9th ed. 1998)). While this authority is broad, the disputed regulation sets two conditions upon the exercise of this authority.[16] These condition precedents are that the cause must be (1) "affecting the legality or validity" (2) of "any mining claim." *See* 43 C.F.R. § 4.451-1. Thus, the "expansive" word "any" refers both to the "cause" for the initiation of the contest proceeding as well as to the "mining claim" at issue. In other words, the regulation is written in the broadest terms possible.

Rather than focus on the key terms of "any cause" related to "any mining claim," the plaintiff seizes upon the phrase "affecting the legality or validity," to argue that this "reference . .

---

[16] The plaintiff makes the unremarkable and undisputed observation that the IBLA's jurisdiction is limited by department regulations. Pl.'s Mot. at 14. The defendants note, however, that the plaintiff exaggerates this claim. For example, while the plaintiff cites several cases for this proposition, "none of the cases concern mining contests," and are wholly inapplicable to the instant case. Defs.' Opp'n at 21; *see e.g.*, *Defenders of the Wildlife*, 169 IBLA 117, 127 (2006) (dismissing a request to order the BLM to update its Environmental Impact Statements and Records of Decision).

. is in the present tense." *See* Pl.'s Mot. at 13. As noted, according to the plaintiff, 43 C.F.R. §
4.451-1 "does not refer to the 'historical validity' of the mining claim," but rather is "limited to
determining the legality or validity in the **present**." *Id.* (emphasis in original). As a result, under
the plaintiff's reading of the disputed regulation, "[a] contest complaint which does not seek a
determination of present legality or validity is not within the scope of this regulation." *Id.*
Notwithstanding the fact that an OHA ALJ adopted this same construction of the regulation in
the 2007 Jurisdictional Decision, this argument that OHA is limited to making validity
determinations only as of the present time is specious for at least three reasons.

First, contrary to the plaintiff's interpretation, the phrase "affecting the legality or
validity" does not indicate "the present," but rather no time tense at all. This gerund phrase
functions to describe the subject matter of the contest proceeding that may be initiated by the
government, without constraint on the timing of when that proceeding is brought or the point in
time when the mining claim is subject to evaluation.

Second, the other clauses in the regulation also impose no time constraints on when the
"cause," which prompts the need for the contest proceeding and a determination of a mining
claim's validity, may arise. The cause affecting the validity of a mining claim may arise in the
past and the effect of that cause may be determined as of that time. In other words, the plaintiff's
construction of the disputed regulation, and by extension the OHA ALJ's 2007 Jurisdictional
Decision, reads into the regulation a time limitation requiring a determination of validity only as
of the "present" time. The plain meaning of "any cause," authorizes a determination of validity
that, depending upon the nature of the cause, may be as of the time of the cause's effect, which
may not be in the "present" time. The plaintiff incorrectly conflates the timing of a
determination, which is obviously made in the present time, with the date when a mining claim

25

may be deemed valid. *See* Pl.'s Mot. at 15 (conceding that "Secretary may institute a challenge to the validity of a mining claim **at** any point in time," but opining that this "does not mean the Department may contest the validity of mining claims **as of** any point in time") (emphasis in original). Contrary to the plaintiff's opinion, a mining claim may be deemed valid or not, as of any date covered by the broad swathe of time when "any cause" may arise.

Finally, if the Secretary "intended that its mining claims validity determinations be limited to specific instances and specific dates, then the government contest regulation could easily have been written in this manner." Defs.' Opp'n at 25. The defendant correctly points out that this regulation has "no part . . . limiting it to only present circumstances" and does not "state "'any present cause' or 'present legality or validity'" as a limit on contests. Defs.' Opp'n at 19. In other words, the disputed regulation does not limit, as the plaintiff contends, the "cause" triggering the need for a contest proceeding to those affecting the validity of a mining claim in the present time but instead more broadly authorizes a contest for "any cause." As the defendants point out, "[t]o read the regulation as stringently as does Plaintiff is simply to read 'any cause' out of the regulation." Defs.' Opp'n at 25. Such cherry-picking of regulatory language does not lead to accurate interpretation or appropriate application. *See Fin. Planning Ass'n v. SEC*, 482 F.3d 481, 488 (D.C. Cir. 2007) ("To read out of a statutory provision a clause setting forth a specific condition or trigger to the provision's applicability is . . . an entirely unacceptable method of construing statutes." (quoting *Natural Res. Def. Council v. EPA,* 822 F.2d 104, 113 (D.C. Cir. 1987)).

Changing tack, the plaintiff also contends that "the mere filing of a taking claim is not a **cause affecting the legality or validity** of the mining claims." Pl.'s Reply Supp. Mot. Partial Summ. J. ("Pl.'s Reply") at 5, ECF No. 17 (emphasis in original); *id*. at 7 ("a takings lawsuit is

26

not a 'cause affecting the legality or validity' of a mining claim"). Consequently, in the plaintiff's view, a referral for an administrative determination of claim validity arising from a takings claim does not confer authority under the disputed regulation for the initiation of a contest. *See id.* at 12 ("to read the regulation as authorizing contest proceedings simply because a takings claim, the presence of which has no effect on the legality or validity of the claims, is to read 'any cause affecting the legality or validity' out of the regulation."). This contention simplistically conflates the legal questions raised in the plaintiff's CFC complaint with the underlying question posed in the administrative proceeding. The "cause" for the initiation of the contest hearing is not, as the plaintiff suggests, his taking claims pending in another tribunal, but the lack of any validating discovery on the plaintiff's mining claims that "could [] have been marketed at a profit as of either 1994 or 2000." AR 7469 (Contest Complaint ¶ 5.1).

In analogous circumstances, the Supreme Court has expressly approved the referral of claim validity determinations to DOI as "the administrative agency that has special competence in the field." *Best*, 371 U.S. at 338. In *Best*, the government sought to condemn property with unpatented mining claims, inherently raising the issue of the validity of appellants' mining claims since, if valid, the claimants were entitled to just compensation for the taking of their claims. *Id.* at 340 (remarking that "entry into possession marks the taking, gives rise to the claim for compensation, and fixes the date as of which the property is to be valued"). The Supreme Court reversed the appellate court's decision that "the validity of the claims was, of necessity, left to judicial determination" because the condemnation suit was in Federal court. *Id.* at 338. Noting DOI's "plenary authority over the administration of public lands," *id.* at 336, as well as the different purposes of the condemnation case "to obtain immediate possession" of the property and the administrative proceeding to determine claim validity, the Court concluded

"that the District Court acted properly in holding its hand until the issue of the validity of the claims has been resolved by the agency entrusted by Congress with the task." *Id.* at 340. Just as in *Best*, where the compensation that would be due upon condemnation turned on the validity of the mining claims located on the condemned property, the compensation due to the plaintiff in his CFC complaint turns on the validity of his mining claims, which matter DOI has "plenary authority" to decide. The "cause" of the administrative proceedings in both *Best* and here was not the federal suit, as the plaintiff suggests, but the fundamental question of whether the mining claims are valid, a question plainly within the authority of DOI and its OHA to determine.

The 2008 IBLA Decision relied upon the plain and unambiguous meaning of the disputed regulation to conclude that "there is nothing in the applicable statutes, Departmental regulations, or case law that restricts mining contests in the manner suggested by [the 2007 ALJ Ruling]." *Freeman*, 174 IBLA at 296; AR 1188. Rather, the legal claim that a taking occurred raises the separate mixed legal and factual question of whether the property interest underlying such taking claim was valid as of the date underlying the alleged taking event. Both the statutory authority granted to the Secretary and the delegated authority to the OHA set out in the disputed regulation are sufficiently broad in scope to authorize the government to initiate a contest proceeding to accomplish the task of answering the question regarding the validity of the property interest.

Since the plain language of the disputed regulation supports this conclusion, not surprisingly, the 2008 IBLA Decision observed that DOI's authority to perform this task of "determin[ing] claim validity as of any point in time has long been recognized by the courts." *Freeman*, 174 IBLA at 295; AR 1187.[17] The IBLA's decision that DOI "can initiate a contest and an ALJ can determine the validity of mining claims as of the date of alleged takings," AR

---

[17] The plaintiff's challenge to the case law precedent for this conclusion is discussed in Part III.C., *infra*.

1186, is not only entitled to substantial deference as an agency interpretation of its own regulation, but also is a clearly reasonable conclusion to be reached based on the plain language of the disputed regulation. Thus, the defendants understandably urge that "[b]ecause the government contest regulation is written so broadly and is plain on its face, no further analysis is necessary to conclude that the contest at issue was properly filed under 43 C.F.R. § 4.451-1. . . [and] OHA has jurisdiction." Defs.' Opp'n at 16.

Nevertheless, in the face of the plaintiff's challenge, the Court proceeds to discuss how IBLA's interpretation of the disputed regulation is both consistent with DOI policies and furthers the purposes of the Mining Law.

**B. 2008 IBLA Decision Comports with DOI Policies and Furthers Purpose of the Mining Law**

The plaintiff contends that the 2008 IBLA Decision neither comports with DOI policies, as reflected in the BLM Handbook titled "Mineral Reports—Preparation and Review," No. 3060 ("BLM Handbook"), Pl.'s Mot. at 23–24, nor furthers the statutory purposes of the Mining Law, *id*. at 24. These arguments are unavailing.

**1. *DOI Policies***

The plaintiff relies on a provision of the BLM Handbook that provides guidance for validity determinations of mining claims on "land open to entry" and instructs that "the discovery date is the date of the field examination by the Mineral Examiner or the hearing." Pl.'s Mot. at 24 (citing BLM Handbook at .081C1). The plaintiff points out that this guidance is consistent with BLM's Mineral Commodity Pricing ("MCP") policy, 65 Fed. Reg. 41,724, AR 7246, which provides that, "where there is no patent application and no withdrawal," mining claim validity determinations are made "**as of the date of the mineral examination.**" Pl.'s Mot.

29

at 24 (quoting AR 7197 and AR 7247) (emphasis in plaintiff's motion)). According to the plaintiff, these policies "demonstrate the longstanding policy of the Department to determine the validity of mining claims using current, as opposed to historical, information, except where there is a withdrawal or a patent." *Id*. at n.37. Contrary to the plaintiff's contention, the 2008 IBLA Decision does not conflict with these cited BLM policies.

At the outset, notably, the IBLA is not bound by the BLM Handbook, which sets out DOI internal guidance. *See Byrd v. Jossie*, 2009 U.S. Dist. LEXIS 10455, at *21 (D. Or. Feb. 11, 2009) ("BLM manuals, although not legally binding, . . . set forth the agency's policy and procedures") (internal citation omitted); *United States v. Michael R. Mark Anthony*, 180 IBLA 308, 343 (2011) (explaining "that while BLM employees may be obliged to follow internal BLM instructions, such instructions do not bind this Board or the public." (citing *Biodiversity Conservation Alliance*, 174 IBLA 174, 180 (2008) and *Wyo. Outdoor Council*, 171 IBLA 153, 166–68 (2007))); *Mike & Sandra Sprunger*, 150 IBLA 64, 73 (1999) ("The BLM Manual is not promulgated with the same procedural protections associated with Departmental regulations, and [the IBLA is] therefore not bound to follow it."); *M.L. Inv. Co. v. BLM*, 130 IBLA 376, 391 (1994) (finding that "the BLM Manual is not promulgated pursuant to the procedures required [under law] and thus does not have the force and effect of law." (citing *United States v. Harvey*, 659 F.2d 62 (5th Cir. 1981))); *Kugel v. United States*, 947 F.2d 1504, 1507–08 (D.C. Cir. 1991) (citing *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981)) (internal policy guidelines create no legal duty on the agency); *Phillips Petroleum Co.*, 117 IBLA 255, 260–61 (1991) (finding that "[t]his Board is not bound to follow internal agency interpretative pronouncements such as the Procedure Paper" at issue which "provid[ed] internal guidance" on valuation of natural gas liquid products for royalty purposes (citing *Hansen*, 450 U.S. at 789 and *United States v. Kaycee*

*Bentonite*, 64 IBLA 183, 214 (1982))); *accord Hansen*, 450 U.S. at 789–90 (holding that Claims

Manual "for internal use by" Social Security Administration ("SSA") employees "is not a

regulation.  It has no legal force, and it does not bind the SSA.").  Nor is the IBLA confined in its

reasoning or decision-making to the MCP policy, which was issued by an Assistant Secretary of

the Interior.  *See* 65 Fed. Reg. 41,726 (July 6, 2000) (MCP policy issued under signature of an

Assistant Secretary of the Interior); *Michael R. Mark Anthony*, 180 IBLA at 345 (finding that the

IBLA is not bound by non-adjudicative statements of an Assistant Secretary because "the

Assistant Secretary does not have authority to issue policy statements that bind all other offices

of the Department not subordinate to the Assistant Secretary"); *Robison v. Bureau of Land*

*Mgmt.*, 120 IBLA 181, 183 (1980) ("In any case, decisions of subordinate officials of the

Department have no precedential value.").

    Thus, even if the policies articulated in the BLM Handbook and the MCP policy applied

to a validity determination made in the context of evaluating an alleged taking, which they do

not, any lack of adherence by the IBLA to those policies would not, standing alone, render the

2008 IBLA Decision arbitrary or capricious.

    Turning first to consideration of the BLM Handbook, the plaintiff correctly recites the

guidance set out in the section titled "Determination Dates for Mineral Reports."  This guidance

suggests two possible dates for discovery, stating that, for certain validity determinations, "the

discovery date is the date of the field examination by the Mineral Examiner or the hearing,"

BLM Handbook, § .08 D.3.  The plaintiff overlooks the significant limitation on the use of this

guidance, however.  Specifically, the very first section of the Handbook sets out its "Purpose" to

provide "minimum standards for preparing, reviewing and approving energy and mineral

resources reports in response to a specific action or application listed in" four other sections of

the handbook. BLM Handbook § .01. None of the enumerated actions requiring a mineral report that are covered by the scope of this Handbook refer to alleged takings claims. *See, e.g., id.* § 11 ("Actions Requiring a Mineral Report"); *id.* § .21 ("Actions Requiring a Coal Mineral Report"); *id.* § .22 ("Actions Requiring an Other-Solid Leasable Minerals Report"); and *id.* § .31 ("Actions Requiring a Fluid Minerals Report"). This explicit limitation on the application of this guidance is a good reason "not to treat the cited guidance as exhaustive," as the defendants urge, noting "that there are obvious omissions." Defs.' Opp'n at 32 n.9.[18]

Similarly, the MCP policy undercuts, rather than supports, the plaintiff's view that historical dates may not be used to determine the validity of a mining claim. In order to provide "a consistent approach in determining claim validity," this policy outlines various steps "to determine the price of mineral commodities when analyzing the economic marketability of a mineral deposit," 65 Fed. Reg. at 41,725**,** and facilitate the evaluation of "whether a mining claim contains a 'discovery' of a valuable mineral deposit." 65 Fed. Reg. 41,724. This policy makes clear that the validity of a mining claim may be determined at the time "the claimant seek[s] to patent the claim," but also "at any other time for any other reason." *Id.* The "particular significant date" for determining the validity of the claim may vary "depending, for example, on whether [the claimant has] filed a patent application or [the claimaint's] mining claim is in an area subsequently withdrawn from mining claim location," since "the value must be tied to an appropriate time period." *Id.* The defendants note that "[t]he focus of the policy

---

[18] The defendants also note that the guidance provided in the BLM Handbook is not entirely correct, explaining that the section cited by the plaintiff provides "that validity on withdrawn lands should be determined as of the date of withdrawal *and* the date of mineral examination or hearing," when instead "the date of hearing has no relevance" and "the relevant dates for mining claims on withdrawn lands that are the subject of a pending patent application are only: (1) the date of each applicable withdrawal that pre-dates the patent application; and (2) the date that the mining claimant satisfied all the requirements for patenting." Defs.' Opp'n at 32 n.9. This is yet another reason for the IBLA not to be bound by internal guidance documents from BLM.

was on how to calculate the price for purposes of analyzing validity, rather than to establish strict rules about marketability dates." Defs.' Opp'n at 31 n. 8.

The plaintiff also highlights language in the MCP policy indicating that when, as here, there is "no patent application and no withdrawals," the validity of unpatented mining claims is determined "as of the date of the mineral examination." 65 Fed. Reg. at 41,725. Yet, this reference begs the question of the date actually used for the mineral examination, which is the issue at bar. The MCP policy's "general" terms suggest that, as part of the mineral examination, the mineral examiner must "determine the mineral commodity price to use on any specific marketability date," 65 Fed. Reg. at 41,725, which date may vary depending on the circumstances. In this case, the defendants state that "in firm reliance on stipulations, the dates analyzed in mineral examination are October 1994 and October 2000," and "the mineral exam dates were always intended to be October 1994 and October 2000." Defs.' Opp'n at 32. Thus, even if the MCP policy were binding on the IBLA, which, as noted, it is not, the use of historical dates as of the alleged takings to determine the validity of the plaintiff's mining claims would not run counter to this policy.

### 2. *Purposes of the Mining Law*

Relying upon a point raised in the 2007 ALJ Ruling, the plaintiff argues that the IBLA's interpretation would undercut the Mining Law's purpose. Pl.'s Mot. at 24. The reasoning parroted by the plaintiff is that the purpose of the Mining Law, "'to reward and encourage the discovery and development of valuable mineral deposits,'" *id*. at 25 (quoting 2007 ALJ Ruling at AR 1270), would not be served "by making the discovery determination for land still open to mineral entry based upon facts existing as of the dates of the alleged taking or some other non-critical date in the past,'" *id*. (quoting 2007 ALJ Ruling at AR 1270). To further the goal of

developing mining claims that are currently valuable, the plaintiff argues that the date of the hearing must be used "as the critical date." *Id*. Otherwise, validity claims would be asserted for claims with no current value or, conversely, claims with current value would be invalidated due to a determination based on a date in the past when the claim lacked value. *Id*. The plaintiff further speculates that allowing the government to initiate contests based upon a selection of "an earlier and most inopportune market conditions to determine that a claim is presently invalid based on those earlier market conditions," would "create[] a significant uncertainty in mining law." *Id*. at 26. The plaintiff's reasoning mixes contexts like proverbial apples and oranges and is therefore fundamentally flawed for at least two reasons.

First, context matters. The legal question concerning the validity of a mining claim may turn on different critical dates, depending on the factual context prompting the contest hearing. No matter the critical date at issue, whether it is in the present or past, OHA has been granted broad jurisdiction to make the determination. For example, if the current validity of a mining claim were at issue, reaching back in time to some historical date to evaluate a claimant's discovery or compliance with requirements would likely be both irrelevant and unfair. On the other hand, as even the plaintiff concedes, if a claimant asserts a claim on land that has been withdrawn, the past date of withdrawal, not the date of the hearing, becomes the critical date since, if no discovery occurred as of the date when the land is withdrawn, the claim is not perfected on that date and no rights have either been acquired or lost as a result of the withdrawal. *See United States v. Mavros*, 122 IBLA 297, 301 (1992) (considering marketability of mining claim as of a past critical date on withdrawn land); Pl.'s Reply at 11.

The Supreme Court's decision almost a century ago in *Cameron v. United States*, 252 U.S. at 459, is instructive on this point. In that case, the United States sued to enjoin a miner

from using land on the southern rim of the Grand Canyon in Colorado. *Id.* at 454. While the miner had located his mining claims at issue in 1902, the land was withdrawn as a monument reserve in 1908. *Id.* at 455. A saving clause granted continued rights "to any 'valid' mining claim theretofore acquired." *Id.* at 455. In a contest hearing held shortly after the creation of the monument reserve, the miner sought "to bring the claim within the savings clause," requiring him to show that "discovery must have preceded the creation of that reserve." *Id.* at 456–57. The Secretary found no discovery at the time of the hearing nor at a time "'prior to the establishment of the National Monument and the withdrawal of the lands therein embraced, as to bring them within the saving clause of the Executive Order.'" *Id.* at 457 (quoting Secretary's decision). The miner challenged, *inter alia*, the Secretary's "authority to determine the character of the land or the question of discovery, or to pronounce the claim invalid." *Id.* at 459. The Supreme Court rejected as "not tenable," *id.* at 459, the challenge to the Secretary's authority to make a validity determination, including at the historical date of the withdrawal of the land, and confirmed that the "power of the department to inquire into the extent and validity of the rights claimed against the Government does not cease until the legal title has passed," *id.* at 413 (internal quotation and citation omitted).

As the defendants point out, just because certain dates are critical to determine claim validity in patenting and withdrawal cases, due to the factual and legal contexts that typically arise in such cases, does not mean "these exact dates must limit OHA's jurisdiction in all contests." Defs.' Opp'n at 21. The defendants provide additional examples of circumstances where the purposes of the Mining Law are served by examination of the validity of mining claims as of historical dates outside of the context of patent applications and withdrawn land. Specifically, when association placer mining claims are transferred from an original number of

locators to a smaller number of locators, discovery must exist at the time of the transfer. *See* 43

C.F.R. § 3833.33(a). In this context, validity of the association placer mining claim must be

established as of the date of the transfer, not the date of the hearing, and restricting a

determination to the hearing date "would make it impossible for the Department to combat

abuses of the Mining Law with respect to association placer claims." Defs.' Opp'n at 34.

Similarly, in order to mine "common variety" minerals, which were removed from the purview

of the Mining Law on July 23, 1955, *see* 30 U.S.C. § 611, the claimant must show a validating

discovery as of that 1955 date. The defendants explain that the "only way to know whether the

common variety mineral can be mined under the locatable minerals regulations (because

discovery predated the 1955 act) or whether the mineral must be mined under the material sales

regulations at 43 C.F.R. § 3600 (because there was no discovery as of 1955 or discovery was lost

sometime after 1955) is to examine validity of the mining claims as of July 23, 1955." Defs.'

Opp'n at 35.

When a contest hearing is initiated to inform a CFC's determination of whether a

compensable taking occurred, the critical date for the determination of validity "is the date of the

event that the mining claimant alleges resulted in a governmental taking of the mining claims."

*Id*. at 22. A mining claim not supported by discovery of valuable minerals as of the date of the

alleged taking, would be invalid at that time and no compensable right would have vested in the

claimant. *See* 30 U.S.C. § 23 (noting that a mining claim perfected when there is a "discovery of

the vein or lode"); *see also Best*, 371 U.S. at 337 ("[N]o right arises from an invalid claim of any

kind."); *Holden v. United States*, 38 Fed. Cl. 732, 735 (Fed. Cl. 1997) ("In order to properly state

a claim for a taking under the Fifth Amendment, a plaintiff must allege and establish his

*ownership* in a compensable property interest . . . in their unpatented mining claims that were alleged to have been taken") (internal citations omitted) (emphasis in original).

Thus, when a contest is initiated to determine the validity of a claim at the time of an alleged government taking, historical dates are not arbitrarily picked by the government with the "manipulat[ive]" purpose of pre-dating discovery and undermining a legitimate claim, as the plaintiff suggests. Pl.'s Mot. at 26. Calling the plaintiff's argument a "red herring," the defendants point out that, in takings litigation, the historical dates are identified by the mining claimant, not the government, and used to determine the validity of the claim in order to evaluate whether any compensable property interest was taken. Defs.' Mot. at 30. In fact, the dates of the alleged takings at issue here, in 1994 and 2000, originated in the complaint filed by the plaintiff before the CFC alleging a taking of his property interests in the mining claims at issue based on two alleged events associated with those dates. *See* AR 10702 (CFC Complaint ¶¶ 6, 11–12 (stating that in 1994 BLM notified the plaintiff that "it would not process applications," including the patent applications he had previously filed, "due to moratorium contained in Congressional appropriations act")); AR 10706 (CFC Complaint ¶ 30 (stating that "[o]n October 11, 2000, the Regional Forester denied [plaintiff']s appeal of the ROD," which is the Record of Decision denying plaintiff's Plan of Operations)). Moreover, the plaintiff agreed, in a stipulation, to the historical dates in 1994 and 2000 as the critical dates of the alleged takings asserted in the complaint. *See* Defs.' Mot. at 8; AR 10877 (plaintiff's counsel acknowledged that 1994 and 2000 might not be the most economically opportune dates but they were appropriate because "the critical date should be the date the claims were [allegedly] taken").[19] When the key

---

[19] The strategy behind the plaintiff's agreement to the "critical" dates is clear: the plaintiff hoped to avoid a scenario where his mining claims would be invalidated based upon events occurring after the events of the alleged takings. *See* AR 10877 (plaintiff's counsel noting, in September 5, 2003 letter to BLM, that the parties "should try to

legal question triggering the initiation of a contest hearing is the validity of mining claims at dates when a claimant alleges a government taking, the use of those historical dates is obviously necessary to answer the question.

A second reason that the OHA does not undermine the purpose of the Mining Law when making a validity determination as of historical dates of an alleged taking identified by a claimant, is that this is precisely the role statutorily assigned to the Secretary of the Interior and delegated to the OHA. Although the plaintiff focuses on the purpose of the Mining Law "to encourage the development of mineral deposits," Pl.'s Mot. at 25, this purpose is not unbounded. *Norton*, 292 F. Supp. 2d at 47–48 (noting that a claimant's "use of the land may be circumscribed . . . because it is not explicitly protected by the Mining Law"). The Mining Law authorizes the Secretary of the Interior to serve as a guardian of the public's rights as part of its management of public lands. *See* 43 U.S.C. § 1457 (charging Secretary of Interior "with the supervision of public business relating to . . . Public lands, including mines"); *Knight v. United Land Ass'n*, 142 U.S. 161, 181 (1891) (describing DOI as the "guardian of the people of the United States over the public lands"). Determining the validity of mining claims and removing any invalid encumbrances from public lands is a fundamental management responsibility of DOI. *Cameron*, 252 U.S. at 460 ("[S]o long as the legal title remains in the government it does have power, after proper notice and upon adequate hearing, to determine whether the claim is valid and, if it be found invalid, to declare it null and void."); *Union Oil Co. v. Udall*, 289 F.2d 790, 792 (D.C. Cir. 1961) ("[I]t is well established that until legal title has passed to the applicant

---

determine the validity of [plaintiff's] claims as of the date of the taking of them" and indicating that "[w]e hope this case does not follow the path used in *Skaw v. United States*, 740 F.2d 932 (Fed. Cir. 1984)[,] where BLM determined that claims were not valid as of a date well after the alleged taking of them").

for a patent, the Secretary may require further inquiry into the validity of claimed rights to public land."); *Davis*, 329 F.2d at 846; s*ee also Freeman*, 174 IBLA at 295–96; AR 1187.

Supervision of the public's rights in public lands *vis a vis* mining claimants "encompasses providing assistance to the United States in resolving a takings lawsuit that arises out of mineral entries on public lands." *Id.* at 295; AR 1187; *see Holden*, 38 Fed. Cl. at 735 (noting that CFC should stay takings proceedings for a determination by the BLM of mining claim validity since the "determination of the validity of such claims is entrusted to the BLM"). The Supreme Court in *Best*, 371 U.S. at 339, expressly sanctioned referral to DOI for an administrative determination of the validity of mining claims, stating that "[i]t is difficult to imagine a more appropriate case for invocation of the jurisdiction of an administrative agency for determination of one of the issues involved in a judicial proceeding."[20] The Court explained that "Congress has entrusted the Department of the Interior with the management of the public domain and prescribed the process by which claims against the public domain may be perfected. The United States, which holds legal title to the lands, plainly can prescribe the procedure which any claimant must follow to acquire rights in the public sector." *Id*. at 339.

Accordingly, the plaintiff's arguments that application of the plain terms of the disputed regulation would undermine DOI policies and the purposes of the Mining Law are simply unsupportable.

## C.     The 2008 IBLA Decision Properly Addresses Precedent

The plaintiff makes several arguments designed to deconstruct the reasoning of the 2008 IBLA Decision and show that the decision was arbitrary and capricious. Specifically, the

---

[20] The Supreme Court "express[ed] no views" on the claimants' objection that "in the District Court value would be determined as of the time of the taking, while before the agency value is determined as of the date of the hearing before the Examiner." *Best*, 371 U.S. at 339 & n.9.

plaintiff contends that the IBLA, first, improperly "conclude[d] that the initiation of a mining contest is the establishment of an intervening right," Pl.'s Mot. at 19, and, second, otherwise relied upon cases that "simply do not provide the needed support," *id*. at 27. Next, the plaintiff argues that the IBLA "employ[ed] differing procedures to [plaintiff] than to others similarly situated," *id.* at 31, which amounts to a violation of collateral estoppel principles and the Equal Protection clause of the U.S. Constitution, *id*. at 32, 34. These claims are addressed, *seriatim*, below.

**1.** **2008 IBLA Decision Does Not Hold that Contest Proceeding Establishes An Intervening Right**

The plaintiff spills much ink arguing that the IBLA incorrectly "assumes" that "'intervening rights' are nothing other than the issuance of a contest complaint." Pl.'s Mot. at 18. This argument is simply a straw man attack on the 2008 IBLA Decision, since the IBLA never held, as the plaintiff contends, that the United States' "intervening right, where there is no withdrawal or change in the law, prevent[s the plaintiff] from having a discovery after the contest proceeding was underway." Pl.'s Mot. at 18.

There is no dispute that an "intervening right" refers to the rights of third parties "who make a discovery after the original locator, but before the original locator makes a discovery." Pl.'s Mot. at 19. The 2008 IBLA Decision refers to "intervening rights" in a summary of well-settled law that a mining claim location may be valid and provide "[v]ested property rights against the United States" only after "the discovery of valuable minerals," unless an intervening right is asserted that renders the date of discovery "'of no effect.'" 174 IBLA 295; AR 1187 (quoting *Cole*, 252 U.S. at 296). The defendants correctly observe that the plaintiff "twists the IBLA's decision to characterize it as saying that a finding of lack of discovery is an "intervening

right" by the United States thus precluding any future location and discovery by [the p]laintiff on land that remains open to mineral exploration." Defs.' Opp'n at 27.

Contrary to the plaintiff's strained reading, the 2008 IBLA Decision did not deem the government's initiation of a contest proceeding as an intervening right that would automatically render a mining claim invalid. Instead, the decision stated the law clearly that discovery was a prerequisite for a validity determination, and mentioned the caveat that "the presence of an intervening right" would render a discovery ineffective. 174 IBLA at 295; AR 1187. Moreover, the IBLA's decision did not declare that the plaintiff was prevented from seeking to relocate his claims. To the contrary, the IBLA expressly noted that "if the lands remain open to mineral entry, [plaintiff] would still be free to relocate the claims. . . ." 174 IBLA 296 n.10; AR 1188–89. The plaintiff even concedes this point, stating that "[t]he IBLA also noted that [plaintiff] could simply relocate his claims, which he has done." Pl.'s Mot. at 28 n.40. Likewise, the IBLA's decision also did not attempt to bar the plaintiff from proving discovery at a date later than the alleged takings, but determined that this was not an issue properly before the OHA. 174 IBLA at 298; AR 1190 (concluding that OHA ALJ "properly held that the validity of the 161 claims as of the hearing date was not at issue because the contest complaint did not include such a charge."). Indeed, the IBLA noted that "[a]ssuming the lands remain open to entry under the mining law, the unsuccessful claimant," who failed to "prove a discovery during the contest hearing," may just like anyone else "'seek[] to make a mining location.'" *Id.* at 296 n.8; AR 1188. Thus, the plaintiff's criticism of the 2008 IBLA Decision based on extrapolations, which are expressly refuted in the decision, does not in any way undercut the merits of the decision.

## 2.     *2008 IBLA Decision Cites Supportive Precedent*

As part of his deconstruction of the 2008 IBLA Decision, the plaintiff challenges the legal cases cited as support for the conclusion that OHA has jurisdiction to make validity determinations as of historical dates, arguing that the four cases relied upon by the IBLA are distinguishable.  Pl.'s Mot. at 27–30.  The plaintiff apparently reasons that "the IBLA is [s]ilent as to the [d]istinguishing features" of those cited cases, *id*. at 27, and, consequently, "arbitrarily ignores its own precedent [to] creates [sic] a new rule applicable only to [plaintiff]," *id*. at 30.  The plaintiff's argument is unpersuasive.

First, the plaintiff takes on the IBLA's citation in a footnote to *Gwillim v. Donnellan*, 115 U.S. 45, 55 (1985), for the proposition that, "If the claimant does not prove a discovery during the contest hearing, then the claimant's entire location falls before the superior interest of the United States, regardless of the date for which validity has been challenged."  *Id*. at 27 (quoting 174 IBLA 296 n. 8; AR 1188).  To the extent that the plaintiff's analysis is intelligible, he appears to be arguing that *Gwillim* involved "parties who claimed a right to the same minerals at different times," unlike the instant case which involves a contest initiated by the government, and that *Gwillim* does not stand for the proposition that a government contest is "the establishment of an intervening right that precludes [plaintiff] from establishing a discovery."  *Id*.  As the discussion in Part III.C.1., *supra*, indicates, the IBLA decision did not equate a government contest with the assertion of an intervening right and, thus, *Gwillim* simply was not cited for such a proposition.

Second, the plaintiff challenges the IBLA citation in another footnote to three cases for the proposition that the IBLA has "upheld numerous contest decisions in which the contestant's complaint alleged invalidity only as of a date years prior to the date of the hearing."  Pl.'s Mot. at

27–28 (discussing 174 IBLA 296 n.9; AR 1188 n. 9 (citing *Clear Gravel Enters., Inc.*, 2 IBLA at 287 ; *Stewart*, 1 IBLA at 161; and *Bartlett*, 2 IBLA at 275)).  According to the plaintiff, "[t]he IBLA is silent as [to] the obvious difference between these cases and the present," *id*. at 28, and "never addresses" the argument that invalidity of a mining claim requires "proof that the claims were not presently valid," *id*. at 30.

The IBLA decision does not assert that the three cases challenged by the plaintiff are identical on their facts to the instant case, but rather, using the signal "*See, e.g.*," cited the cases as examples of circumstances when historical dates are used to determine claim validity.  In both *Clear Gravel Enterprises, Inc.*, 2 IBLA at 294 and *Stewart*, 1 IBLA at 164, the IBLA determined that the claims were invalid because "the materials on the claims were not marketable" as of a prior historical date when a congressional act removed those materials from the mining laws.  In *Bartlett*, 2 IBLA at 276, the IBLA determined that as of a historical date when the land was withdrawn from mineral entry, "a market did not exist for" the minerals, which invalidated the claim.

The crux of the plaintiff's criticism of the IBLA's citation to these three IBLA cases is that validity determinations as of historical dates should be limited to the factual scenarios presented in those three cases, namely, "the withdrawal of land or 'withdrawal' of specified minerals," and "when the miner has filed to receive a patent to the land."  Pl.'s Mot. at 29.  The plaintiff points out the obvious, that "[n]one of those considerations exist in the present case," *id*., and apparently reasons from that observation that the IBLA lacked precedential foundation for its conclusion regarding OHA's jurisdiction to determine claim validity as of historical dates of alleged takings.

The factual differences noted by the plaintiff are immaterial. Instead, as the plaintiff acknowledges, in the factual scenarios presented in the three cited IBLA cases, "the consideration of validity in the past is critical to determining present validity or present relief." Pl.'s Mot. at 29. This same consideration applies here: whether a valid claim existed at the historical date of an alleged taking is "critical" to determining whether a claimant is entitled to "present relief" for a compensable interest subject to that historical taking. Thus, the IBLA properly relied upon these cases in support of its conclusion and the factual distinctions in the three cited IBLA cases do not render the IBLA's decision-making erroneous.[21] *See Thomas Jefferson Univ.,* 512 U.S. at 512 ("[T]he agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.") (internal quotations and citations omitted); *see also Sierra Club v. Leavitt,* 355 F. Supp. 2d 544, 548 (D.D.C. 2005).

The plaintiff's view that "discovery may be proven after adverse proceedings have been started," Pl.'s Mot. at 22, is well-supported when the query before the OHA is whether a mining claim is presently valid. Yet, that was not the query raised either in (1) the plaintiff's CFC complaint, where he contends that the "Forest Service's actions caused a taking of [plaintiff]'s property rights," AR 10699–712 (CFC Complaint ¶¶ 40, 48, 55, 62), which alleged actions all occurred at historical dates prior to the future contest hearing; or (2) the government's contest complaint, which charged in relevant part that "[m]inerals have not been found on any of the 161

---

[21] The plaintiff also relies on *United States v. Houston,* 66 Interior Dec. 161 (1959), for the proposition that where claims are found to be invalid at the time of a patent application, nonetheless the "claims cannot be declared null and void unless the claims are also proven to be invalid at the time of the hearing." Pl.'s Mot. at 29. According to the plaintiff, this case confirms that "there must have been proof that the claims were not presently valid" for the claims to be null and void. *Id.* at 29–30. The relevance of the *Houston* decision to the case at bar is difficult to discern since the contexts are so different, but it bears pointing out that, in the former case, (1) the government did not ask for the claims to be declared null and void, which is why no such finding was made, 66 Interior Dec. 633; and (2) the decision acknowledges that the possibility of ascertaining discovery as of a historical date, stating "[i]f it ever becomes material, the existence of a past discovery within the limits of each claim will have to be established with precision," *id* at 165.

44

mining claims in sufficient qualities or quantities to constitute a discovery [and] [a]ny minerals could not have been marketed at a profit as of either 1994 or 2000," AR 7468–76 (Contest Complaint at ¶ 5).  In other words, prompted by the plaintiff's complaint before the CFC, the query posed in the contest complaint was whether the plaintiff's mining claims were valid as of the historical dates of the alleged takings. Thus, it is the plaintiff, not the IBLA, who relies on incorrect precedent by relying on caselaw focused on the present validity of mining claims.

For example, the plaintiff relies on *United States v. Foster*, 65 Interior Dec. 1 (1958), and *Davis v. Wiebbold*, 139 U.S. 507 (1891), for the propositions that "30 U.S.C. § 22 requires that a valid mining claim contain a valuable mineral deposit **at present**," and that "a discovery may be proven **after adverse proceedings** have been started," Pl.'s Mot. at 22 (emphasis in original). Allowing validation of claims at historical points of time would, according to the plaintiff, impermissibly depart "*sub silentio*" from *Foster* and its progeny.  *Id.* at 23 (quoting *FCC v. Fox Television Stations, Inc*., 556 U.S. 502, 515 (2009)).  The OHA ALJ expressed the same view, observing that "[c]onsistent with the pronouncements in *Foster*, and in the absence of a withdrawal, the mining law dictates that the existence of a discovery be determined in a contest as of the present, *i.e.*, the date of hearing, or, where a patent application has been filed and the application complied with all of the requirements for obtaining a patent."  AR 1269.

Both *Foster* and *Davis*, however, contain important caveats that undercut the plaintiff's reliance and, instead, confirm that the use of historical dates to evaluate the validity of a claim may be required in some contexts.  The issue addressed in *Foster* was straight-forward: the claimants contended that validating mineral deposits had been discovered both at the time of the government initiated contest hearing and at a prior time when the government believed the location had been withdrawn.  *Foster,* 65 Interior Dec. at 3.  The IBLA summarized the legal

45

principles that applied, explaining that "[w]hen the Government withdraws the land, a discovery after the withdrawal will not serve to validate the claim" but a discovery made "after adverse proceedings have been started . . . will permit the locator to retain possession of the land, all else being regular, and in the absence of a withdrawal of the land in the interim." 65 Interior Dec. at 5–6**.** After evaluating the evidence at the *Foster* hearing, the IBLA concluded that there was no credible evidence of discovery and therefore that the claims were presently invalid. Consequently, the IBLA did "not reach" the question of whether the claims were valid before the lands were purportedly withdrawn, *id*. at 11, certainly implying that such a determination at an earlier date was within its purview to "reach." The defendants further note that the decision in *Foster* supports the IBLA's conclusion because, "[j]ust as [in] *Foster*" where "'a discovery after the withdrawal will not serve to validate the claim,' similarly a discovery after the date of alleged taking will not serve to create a property right as against the United States as of the date of alleged taking." Defs.' Opp'n at 20.

The plaintiff's reliance on *Davis v. Wiebbold*, 139 U.S. at 508, is similarly misplaced. Pl.'s Mot. at 22. In that case, the plaintiff sought possession of land, to which he held a patented mining claim, over the objection of the defendant, who held a competing town-site patent, which had been issued earlier than the mining claim patent for the same location. *Davis*, 139 U.S. at 508. The Supreme Court reversed the lower court's ruling in favor of the plaintiff and ordered a new trial, explaining that "[n]o proof was offered to show when the mining claim was originally located." *Id*. at 526. While making clear that the defendant land owner may not be deprived "of the premises purchased and occupied by him because of a subsequent discovery of minerals in them and the issue of a patent to the discoverer," *id*. at 518, the Court explained that "the question was not whether there were valuable minerals at the time that [the mining claim] patent

46

was issued, but whether such minerals were known to exist within the premises at the date of the town-site patent." *Id*. at 527. Thus, the Court sent the case back for a new trial to address whether a validating discovery had been made "and the rights of the mining claimant had thus attached before the town-site patent was issued," *id*. at 529, thereby expressly sanctioning the use of historical dates in evaluating the validity of the mining claim when the question so required.

In short, the cases relied upon by the plaintiff and in the 2008 IBLA Decision support the common sense conclusion that the relevant date for determination of a mining claim's validity may vary, depending upon the legal and factual context at issue.

### 3.      *2008 IBLA Decision Is Not Barred By Collateral Estoppel*

In a last gasp effort to avoid the ruling in the 2008 IBLA Decision, the plaintiff argues that BLM should be precluded from asserting that the OHA had jurisdiction to review the mining claims as of the alleged takings dates because the agency is barred from doing so under the doctrine of collateral estoppel. Pl.'s Mot. at 32. Specifically, the plaintiff relies on two "unappealed" ALJ rulings in unrelated contest proceedings, in which the ALJ found that "OHA has no jurisdiction to determine the validity of mining claims in the past when such a ruling has no effect on the present validity of the claims." Pl.'s Mot. at 32 (citing ALJ rulings in *Aloisi*, CACA 41272 and *Story*, Idaho 15974). Although recognizing that collateral estoppel cannot be applied "automatically" offensively against the government, *id*. (citing *United States v. Mendoza*, 464 U.S. 154, 159 (1984)), the plaintiff argues that "in this case collateral estoppel should be applied *defensively*," since the ALJ rulings were "final," "not appealed," and "the alignment in subject matter . . . is as close as possible." *Id*. The plaintiff is incorrect.

First, OHA ALJ rulings simply are not binding on the IBLA or even other OHA ALJs. *See West Cow Creek Permittees v. Bureau of Land Mgmt.*, 142 IBLA 224, 237 (1998)

("Decisions of administrative law judges are not Departmental precedents and are not binding on this Board or other administrative law judges." (citation omitted)); *McLean v. Bureau of Land Mgmt*, 133 IBLA 225, 235 n.16 (1995) ("decisions of [ALJs], while certainly worthy of respectful consideration, are not Departmental precedents and are not binding on this Board nor are they binding upon other [ALJs], unless they are adopted by the Board in adjudication of an appeal"); *Robison*, 120 IBLA at 183 (finding ALJ decisions not controlling because "Hearings Division decisions are not published, the Board does not routinely receive copies, and appellants have not submitted copies of the cited decisions. In any case, decisions of subordinate officials of the Department have no precedential value."); *United States v. Gayanich*, 36 IBLA 111, 116 (1978) (noting that decisions of hearing examiners "absent any appeal, become final for the Department, although not precedential"). The fact that the rulings in *Aloisi* and *Story* were not appealed and, thus, were final in that sense for purposes of those proceedings, does not elevate them to the level of a binding final agency action, which is reserved solely for IBLA decisions. 43 C.F.R. § 4.21 (d); *Wildearth Guardians v. Jewell*, 738 F.3d 298, 304 (D.C. Cir. 2013). Moreover, the fact that the ALJ rulings in *Aloisi* and *Story* relied upon by the plaintiff for preclusive effect in this case were not appealed by BLM does not somehow make them more authoritative or binding on DOI.

Second, the undisputed description by the defendants of the procedural posture of *Aloisi* and *Story* when the ALJ's issued their no-jurisdiction rulings explains why those rulings were "unappealed." *See generally* Pl.'s Reply. The lack of any appeal of those unrelated ALJ rulings was certainly not due to DOI agreeing with or acquiescing in those decisions in a manner that would suggest a changed agency policy being applied to the plaintiff here. In *Aloisi*, the ALJ refused to certify an interlocutory appeal of his ruling that he lacked jurisdiction to determine

validity as of the dates of the alleged temporary takings when the contest complaint failed to provide those dates, or to stay the imminently-scheduled hearing, which did not leave adequate time for an appeal prior to the hearing. Defs.' Opp'n at 37–38; AR 1335–36. By contrast, in this case, the OHA ALJ certified the interlocutory appeal of his jurisdictional ruling and the contest complaint clearly set out the dates of the alleged takings as the appropriate dates for the validity determination. In *Story*, the contest proceeding was dismissed without prejudice, before the issuance of any decision on the merits of the contest, because the mining claims were declared abandoned and void by operation of law due to the claimant's failure to comply with mandatory annual filing requirements, obviating any need for an interlocutory appeal of the ALJ's jurisdictional ruling. *See* Defs.' Opp'n at 39.[22]

Finally, the plaintiff tries to justify his invocation of collateral estoppel here as "*defensive*," and falling outside the general rule against applying *offensive* estoppel to the government, Pl.'s Mot. at 32, but this distinction makes no difference. The Supreme Court has made clear that a private party may not invoke non-mutual collateral estoppel against the government with respect to an issue on which a different private party prevailed in prior litigation with the government. In *Mendoza*, 464 U.S. at 160, the Court explained that,

> allowing nonmutual collateral estoppel against the Government in such cases would substantially thwart the development of important questions of law by freezing the first final decision rendered on a particular legal issue. Allowing only one final adjudication would deprive this Court of the benefit it receives from permitting several courts of appeals to explore

---

[22] Informed by this background information explaining the reasons for no appeal of the ALJ no-jurisdiction rulings in *Aloisi* and *Story*, the plaintiff's reliance on *State of Alaska Dep't of Transp. and Public Facilities ("State of Alaska"),* 154 IBLA 57 (2000), is particularly inapposite. Pl.'s Mot. at 32 n. 44. In *State of Alaska*, the IBLA determined that mutual collateral estoppel may be applied "when a party had an opportunity to obtain review within the Department and no appeal was taken," and applied the doctrine to the State of Alaska, which "had the opportunity to challenge before the Board all facets of [a prior] decision, but it elected not to take advantage of that option by not appealing." 154 IBLA at 61. Here, the plaintiff is seeking to apply non-mutual collateral estoppel against the government and, even if this were appropriate, agency had little to no opportunity to appeal the no-jurisdiction rulings in *Aloisi* and *Story*.

a difficult question before this Court grants certiorari.

*Id.* Moreover, the Court stressed that "a contrary result might disserve the economy interests in whose name estoppel is advanced by requiring the Government to abandon virtually any exercise of discretion in seeking to review judgments unfavorable to it." *Id*. at 163. *See also United States v. Alaska*, 521 U.S. 1, 13 (1997) (remarking that "the doctrine of nonmutual collateral estoppel is generally unavailable in litigation against the United States"); *AFL-CIO v. Fed. Labor Relations Auth.*, 835 F.2d 1458, 1462 (D.C. Cir. 1987) ("Collateral estoppel will apply against the government only if mutuality of parties exists."); *Tunica-Biloxi Tribe of La. v. United States*, 577 F. Supp. 2d 382, 416 (D.D.C. 2008) (same); *Love v. Veneman*, 2001 U.S. Dist. LEXIS 25201, at *4 n.4 (D.D.C. Dec. 13, 2001) (recognizing that "nonmutual offensive collateral estoppel is not available against the government"). These policy reasons underlying the general rule against allowing nonmutual collateral estoppel against the government certainly apply here, when the subject matter involves a fundamental question about the jurisdiction of the OHA to assist the CFC in alleged takings cases, and the prior ALJ rulings which the plaintiff here seeks to give preclusive effect were not only lower level administrative decisions not otherwise binding on DOI but also did not provide a full and fair opportunity for appeal to the government. Under these circumstances, the general rule amply applies and no non-mutual preclusive effect is warranted for the ALJ rulings in *Aloisi* and *Story*.

Accordingly, the ALJ rulings in two unrelated proceedings have no preclusive effect on the IBLA and do not operate to bar application of the 2008 IBLA Decision in this case.

### 4.    *2008 IBLA Decision Does Not Violate the Equal Protection Clause*

Finally, the plaintiff argues that because the IBLA reached a different conclusion in the plaintiff's case than did the ALJs in *Aloisi* and *Story*, the IBLA violated the "fundamental norm

of administrative procedure that requires an agency to treat like cases alike," Pl.'s Mot. at 34

(quoting *Westar Energy, Inc., v. Fed. Energy Regulatory Comm'n*, 473 F.3d 1239, 1241 (D.C.

Cir. 2007)), was arbitrary and capricious, and violated equal protection of the laws.  Pl.'s Mot. at

34.  The essence of this argument is that the plaintiff is similarly situated to other mining

claimants, but treated differently without a legitimate government interest.

Under both the APA and the Equal Protection Clause, agencies are prohibited from

treating similarly situated individuals differently without providing sufficient justification.  *See*

*Muwekma Ohlone Tribe v. Salazar*, 708 F.3d 209, 215 (D.C. Cir. 2013) ("To prevail on an equal

protection claim, the plaintiff must show that the government has treated it differently from a

similarly situated party and that the government's explanation for the differing treatment 'does

not satisfy the relevant level of scrutiny.'" (quoting *Settles v. U.S. Parole Comm'n*, 429 F.3d

1098, 1102–03 (D.C. Cir. 2005))).  As the plaintiff concedes, Pl.'s Mot. at 36, the relevant level

of scrutiny applied to DOI's decision here is rational basis "because Interior's action does not

target a suspect class or burden a fundamental right," *Muwekma Ohlone Tribe*, 708 F.3d at 215.

Thus, so long as the agency decision has a firm rational basis, the Court is bound to uphold it.

*Hosp. of Univ. of Penn. v. Sebelius,* 634 F. Supp. 2d 9, 13 (D.D.C. 2009) (citing *Citizens to*

*Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971)).  To be similarly situated, the

parties must be "*prima facie* identical in all relevant respects, or directly comparable . . . in all

material respects."  *Racine Charter One, Inc. v. Racine Unified Sch. Dist.,* 424 F.3d 677, 680

(7th Cir. 2005) (internal citations and quotation marks omitted).

Assuming *arguendo* that the plaintiffs in *Aloisi* and *Story* are similar in sufficiently

material respects with the instant plaintiff, the plaintiff's argument is nonetheless unavailing

because the 2008 IBLA Decision was well justified.  First, an equal protection claim cannot be

used to impose a requirement on the IBLA to adhere to ALJ rulings that otherwise have no binding or precedential value for the IBLA. Second, the IBLA has sufficient justification based upon the plain meaning of the disputed regulation to exercise its authority and review the plaintiff's mining claims based upon historical dates. Finally, the 2008 IBLA Decision is bolstered on the merits by the additional justifications that the contest charges alleging the mining claims' invalidity as of historical dates were based upon the parties' agreement regarding the dates of the alleged takings, *see Freeman*, 174 IBLA at 292; AR 1184; prior IBLA decisions employed historical dates to determine claim validity, *id*. at 295; AR 1187; and plenary authority of DOI to supervise public business on public lands is sufficiently broad to encompass providing assistance in resolving takings claims by determining validating discovery as of alleged taking dates, *id.*

Accordingly, the IBLA's decision does not run counter to the mandates of the APA or the Equal Protection Clause. *See Envtl. Def. Fund, Inc. v. Costle*, 657 F.2d 275, 283 (D.C. Cir. 1981) (explaining that the "highly deferential" arbitrary and capricious standard "mandates judicial affirmance if a rational basis for the agency's decision is presented"); *Safari Club Int'l v. Jewell*, 11-CV-01564 BAH, 2013 WL 4041541, at *21 (D.D.C. Aug. 9, 2013). [23]

---

[23] The plaintiff argues "in the alternative" that "if the OHA does have jurisdiction to determine the validity of mining claims as of the dates of alleged takings, the IBLA's decision that 1994 and 2000 were the alleged takings dates is reversible under 5 U.S.C. § 706(2)(E)." Pl.'s Mot. at 37. The defendants respond that the "IBLA did not independently determine the alleged dates of takings, so there is nothing to reverse." Defs.' Opp'n at 43. As this partial motion for summary judgment solely challenges the IBLA's decision regarding jurisdiction, *see* Pl.'s Mot. at 36 (calling the jurisdictional issue the "primary issue"), not the subsequent IBLA determination on the merits that the plaintiff's mining claims were not valid as of 1994 and 2000, because there was no discovery as of those alleged takings dates, the Court concludes that this "alternative" argument relates to the plaintiff's second cause of action, which the parties requested to be subject to separate briefing. Consequently, the "alternative" argument will not be addressed here.

## IV.    CONCLUSION

For the aforementioned reasons, the plaintiff's Partial Motion for Summary Judgment is denied.  An appropriate order accompanies this Memorandum Opinion.


Date:  April 16, 2014


_____
BERYL A. HOWELL
United States District Judge